# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| ANGELA A. THOMAS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | 1:14CV518 |
| | ) | |
| SUNTRUST MORTGAGE, INC. | ) | |
| and SUBSTITUTE TRUSTEE | ) | |
| SERVICES, INC. TRUSTEE | ) | |
| SERVICES, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

The instant matter comes before the undersigned United States Magistrate Judge for a recommended ruling on Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Docket Entry 5). (See Docket Entry dated Aug. 20, 2014.) For the reasons that follow, the Court should grant Defendants' instant Motion.

BACKGROUND

Plaintiff, proceeding pro se, commenced this action seeking relief related to Defendants' foreclosure proceeding as to her house; more specifically, the Complaint asserts in conclusory fashion that Defendants made "false claims and statements . . . in all prior legal proceedings and during the collection of wrongfully paid money from about 2007-2014. There is a conflict present with regards to ownership of the note disputed and discussed herein." (Docket Entry 1 at 1.) The Complaint further alleges that,

"[b]eginning around September 11, 2011 a request for validation of debt was sent to . . . [D]efendants with regards to the note in question [and that] [t]o date, no valid evidence to which would prove rightful ownership of the note have been presented by [D]efendants." (Id. at 3.) According to the Complaint, in May of 2012, Plaintiff received correspondence from Maureen Harris, an employee of Defendant SunTrust Mortgage, Inc., indicating "that Ginnie Mae was the owner of the note and that [Defendant] SunTrust Mortgage, Inc., was merely servicers [sic] (third party collection agents/due to transfer of debt)." (Id. at 4.) However, in June and July of that year, Ms. Harris' correspondence allegedly indicated "that [Defendant] SunTrust Mortgage, Inc., was both owner and servicer of the note." (Id.) The Complaint then references an affidavit from Shaundra Hunt regarding an allegedly undisclosed transfer that "took place between both Ginnie Mae and SunTrust Mortgage, Inc." (Id. at 5.)

In addition, the Complaint conclusorily asserts that Plaintiff's "lender failed to properly disclose information in violation of various consumer protection laws and that lender has attached costs to [] [P]laintiff of which amounts to fraud and possibly usury to the detriment of Plaintiff." (Id. at 3.) Finally, according to the Complaint, in "May 2014, Plaintiff . . . filed a lawsuit against Jennifer L. Wood, a notary that stated that she signed the Deed of Trust in connection to the note that pledged

2

the property as collateral to retain the loan in her presence which was not true." (Id. at 5-6.) Defendant SunTrust Mortgage, Inc. apparently intervened. (See id. at 6.)

Based on the foregoing allegations, the Complaint asserts the following claims: "Count I. (Fair Debt Collection Practices Act, 15 USC 1692g.809)" (id. at 6-7); "Count II. (Harassment 15 U.S Code 1692d)" (id. at 7); "Count III. (Unfair practices 15 U.S Code 1692f)" (id. at 7-8); "Count IV. (Validation of debt 15 U.S code 1692g)" (id. at 8); "Count V. Violation of the Real Estate Settlement Procedures Act ["RESPA"], 12 U.S.C. Section 2605(e), Regulation X at 24 C. F. R. 3500, The Gramm Leach Bliley Act" (id. at 8-9); "Count VI (Copy Right infringement Title 17 > Chapter 5 > § 501 7 U.S. Code)" (id. at 9); "Count VII (North Carolina unfair & deceptive Act NCGS 75-122)" (id.); "Count VIII (Common Law Fraud; N.C. Gen. Stat. § 75-1.1)" (id. at 9-10); "Count IX (Unjust Enrichment; N.C. Gen. Stat. § 75-1.1)" (id. at 10); and "Count X (Payment by Mistake)" (id. at 10-11). Each claim includes a statement substantially the following form: "By reason of conduct in [the foregoing factual section of the Complaint], [Defendants] SunTrust Mortgage, Inc., & Substitute Trustee Service, Trustee Services, Inc., knowingly presented false claims to the court and demanded payment from [P]laintiff or subject her to have property taken away by way of fraudulent foreclosure." (See id. at 6-11.)

The Complaint seeks the following relief:

A. Under Counts I, II, III & IV; (Fair debt Collections Act) damages [] [P]laintiff has sustained, including investigative cost, plus civil penalties as allowable by law; and

B. Under Counts V., (R[ESPA] Violation) a penalty equal to wice [sic] the amount of and

C. Under Counts VI., (Copyright infringement) all consequential damages incurred by Plaintiff no less than amount invoiced which was set at $500,000.00 each Occurrence.

D. Under Counts VII., ((North Carolina unfair & Deceptive Act) a sum equal to what the law state [sic] is max, which is $4000.00.

E. Under Count VIII., (Common Law Fraud) triple damages for sale of property to be paid by each [D]efendant. Home estimated value $150,000.00.

F. Under Count IX., (unjust enrichment) a sum equal to the amount by which both [D]efendants were enriched combined.

G. Under Court [sic] X., (Payment by mistake) a sum equal to the amount of payments made by [] [P]laintiff to [Defendant] SunTrust Mortgage, Inc. and property valued at the time [Defendant] Substitute Trustee Services sold [P]laintiff Home which was est. $150.000.00 plus interest and

H. An order reversing the foreclosure order of Judge Claire Hill on or about February 1, 2013 in file 12 SP 03. And or

I. Such other relief as this Court may deem just and proper, together with interests and cost of his [sic] action.

(Id. at 11-12.)

Defendants have moved to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(1) and (6) for lack of subject matter

4

jurisdiction and for failure to state a claim, respectively. (Docket Entry 5.) They attached numerous documents to their supporting brief, including an order dated November 1, 2012, from the Hoke County Superior Court allowing foreclosure (Docket Entry 6-15), an Order Allowing Foreclosure dated February 1, 2013, from the Hoke County Superior Court after review of Plaintiff's appeal of the first order (Docket Entry 6-19), an order dated June 19, 2013, from the North Carolina Court of Appeals dismissing Plaintiff's appeal (Docket Entry 6-20), an order dated August 27, 2013, from the Supreme Court of North Carolina dismissing Plaintiff's appeal (Docket Entry 6-21), the Report of Foreclosure Sale/Resale dated March 27, 2014 (Docket Entry 6-23), Plaintiff's complaint against Jennifer Wood filed in Hoke County District Court and dated April 2, 2014 (Docket Entry 25), an order dismissing Plaintiff's case against Ms. Wood with prejudice (Docket Entry 6-26), a complaint filed by Plaintiff against Defendants in Hoke County Superior Court to quiet title and seeking declaratory judgment voiding the foreclosure proceeding and subsequent sale (Docket Entry 6-27), a complaint filed by Plaintiff in the Cumberland County District Court against Defendants for "[f]ailure to respond to debt disclosure notice as required by law" (Docket Entry 6-28), a judgment dismissing the Cumberland County District Court action against Defendants (Docket Entry 6-29), a complaint filed by Plaintiff in the Cumberland County District Court against

5

Defendants for "[f]ailure to validate debt & respond to disclosure notice as required by state law" (Docket Entry 6-30), and a judgment dismissing the second Cumberland County case (Docket Entry 6-31).[1] Plaintiff did not respond to the instant Motion. (See Docket Entries dated July 17, 2014, to present.)[2]

DISCUSSION

A. *Rooker*-*Feldman* Doctrine

Defendants first contend that "[t]he *Rooker-Feldman* doctrine divests this Court of Subject Matter Jurisdiction to hear Plaintiff's claims for relief." (Docket Entry 6 at 10.) The Rooker-Feldman doctrine precludes a district court from hearing an action "brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced." Exxon Mobil v. Saudi Basic Indus. Corp., 544 U.S. 280, 281 (2005). It applies where: "(1) the federal

---

[1] In addressing a dismissal motion, a court may consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 322 (2007); see also Stratton v. Mecklenburg Cnty. Dep't of Soc. Servs., 521 F. App'x 278, 290 n.22 (4th Cir. 2013) (recognizing that "records of [state court] proceedings constitute pertinent facts in this litigation, properly subject to judicial notice"); Fed. R. Civ. P. 201.

[2] Under this Court's Local Rules, failure to respond to a motion generally warrants granting the relief requested. See M.D.N.C. LR7.3(k). However, in the context of "motions to dismiss, . . . the district court nevertheless has an obligation to review the motions to ensure that dismissal is proper." Stevenson v. City of Seat Pleasant, Md., 743 F.3d 411, 416 n.3 (4th Cir. 2014).

court plaintiff lost in state court; (2) the plaintiff complains of 'injuries caused by state-court judgments;' (3) the state court judgment became final before the proceedings in federal court commenced; and (4) the federal plaintiff 'invit[es] district court review and rejection of those judgments.'" Willner v. Frey, 243 F. App'x 744, 746 (4th Cir. 2007) (quoting Exxon, 544 U.S. at 284).

"In the context of a state court foreclosure proceeding, *Rooker-Feldman* prohibits claims brought in federal court that may succeed only to the extent that the state court wrongly decided the foreclosure action." Poindexter v. Wells Fargo Bank, N.A., No. 3:10cv257-RJC-DLH, 2010 WL 3023895, at *2 (W.D.N.C. July 29, 2010) (unpublished) (internal quotation marks omitted). "[T]he *Rooker-Feldman* doctrine is particularly relevant when there is a means of appeal provided by the state." Radisi v. HSBC Bank USA, Nat'l Ass'n, No. 5:11CV125-RLV, 2012 WL 2155052, at *4 (W.D.N.C. June 13, 2012) (unpublished). Finally, "[t]he *Rooker-Feldman* doctrine bars consideration not only of issues actually presented to and decided by a state court, but also of [federal] claims that are inextricably intertwined with questions ruled upon by a state court, as when success on the federal claim depends upon a determination that the state court wrongly decided the issues before it." Plyler v. Moore, 129 F.3d 728, 731 (4th Cir. 1997) (internal quotation marks omitted).

7

In this case, Plaintiff specifically requests that this Court reverse the final judgment of the Hoke County Superior Court (Docket Entry 6-19), an action both the North Carolina Court of Appeals and the North Carolina Supreme Court declined to take (see Docket Entries 6-20, 6-21). The Rooker-Feldman doctrine thus applies and bars this Court from hearing Plaintiff's case. See SunTrust Mortg., Inc. v. Pippin, No. 5:10CV1-RLV, 2012 WL 5023109, at *4 (W.D.N.C. Oct. 16, 2012) (unpublished) ("A judicial determination has already been made in the state court special proceeding that foreclosure upon the property . . . was, in fact, proper and consistent with applicable North Carolina law. Under the governing statute, [the losing party in that action] had the opportunity to appeal the foreclosure order. . . . Pursuant to *Rooker-Feldman*, this [c]ourt may not sit in appellate review of the state court's judgment as to foreclosure."); In re Almanzar, Bankruptcy No. 12-80385C-13D, 2012 WL 4794361, at *3 (Bankr. M.D.N.C. Oct. 9, 2012) (unpublished) ("The state court found in the Foreclosure Order that Bank of America is the holder of the Note. The Assistant Superior Court [clerk] further determined that [the plaintiff] received proper notice of the foreclosure hearing. The Clerk's . . . order permitting foreclosure sale of [the plaintiff's] home was a final 'judicial act' appealable to the appropriate state court within ten days of its entry. . . . *Rooker-Feldman* prohibits this court from now asserting jurisdiction

8

over [the plaintiff's] defenses against foreclosure, because these defenses can succeed only to the extent that [the plaintiff's] foreclosure case was wrongly decided - a determination which would require this court to exercise de facto appellate jurisdiction over the findings of the state court."); Brumby v Deutsche Bank Nat. Trust Co., No. 1:09CV144, 2010 WL 617368, at *2-6 (M.D.N.C. Feb. 17, 2010) (unpublished) (finding claims of violations of, inter alia, FDCPA and North Carolina's unfair and deceptive trade practices statute inexplicably intertwined with state court foreclosure order and thus barred by Rooker-Feldman).

### B. Collateral Estoppel

Defendants alternatively argue that collateral estoppel bars Plaintiff's case. (Docket Entry 6 at 14-16.) "[A] final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action." Allen v. McCurry, 449 U.S. 90, 94 (1980). To that end, "federal courts [must] give preclusive effect to state-court judgments whenever the courts of the State from which the judgments emerged would do so . . . ." Id. at 96. Under North Carolina law, "a final judgment on the merits in a prior action will prevent a second suit based on the same cause of action between the same parties or those in privity with them." Thomas M. McInnis & Assocs., Inc. v. Hall, 318 N.C. 421, 428 (1986).

Under North Carolina law, before issuing an order allowing a foreclosure to proceed, the clerk of court must examine the proffered evidence and find the existence of, in relevant part: (1) a valid debt; (2) default; (3) the right to foreclosure under the instrument; and (4) notice. See N.C. Gen. Stat. § 45-21.16(d). "Issues that the clerk of court decides at a foreclosure hearing as to the validity of the debt and the trustee's right to foreclose are subject to res judicata . . . ." Merrill Lynch Bus. Fin. Servs., Inc. v. Cobb, No. 5:07-cv-129-D, 2008 WL 6155804, at *3 (E.D.N.C. Mar. 18, 2008) (unpublished). Here, the Clerk of Superior Court for Hoke County made those requisite findings (see Docket Entry 6-15 at 2), as did a superior court judge upon Plaintiff's appeal (see Docket Entry 6-19). This Court thus may not invalidate the Hoke County Superior Court's final judgment by finding that the deed of trust is void, that Defendant SunTrust Mortgage, Inc. is not the holder of the debt, that the debt is invalid, that Plaintiff did not default on the debt, or that Defendant Substitute Trustee Services could not foreclose upon the property, all of which Plaintiff seeks in this action. Principles of collateral estoppel therefore bar Plaintiff's case.

### C.  Failure to State a Claim

Finally, Defendants argue that Plaintiff's Complaint fails to state a claim upon which relief may be granted. A complaint fails as a matter of law if it does not "contain sufficient factual

matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal citations omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). In applying this standard, the Supreme Court has reiterated that "[a] document filed pro se is to be liberally construed and a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (internal citations and quotation marks omitted). However, the United States Court of Appeals for the Fourth Circuit has "not read Erickson to undermine Twombly's requirement that a pleading contain more than labels and conclusions," Giarratano v. Johnson, 521 F.3d 298, 304 n.5 (4th Cir. 2008) (internal quotation marks omitted) (applying Twombly standard in dismissing pro se complaint); accord Atherton v. District of Columbia Off. of Mayor, 567 F.3d 672, 681–82 (D.C. Cir. 2009) ("A pro se complaint . . . 'must be held to less stringent standards than formal pleadings drafted by lawyers.' But even a pro se complainant must plead 'factual matter' that permits the court to infer 'more than the mere possibility of misconduct.'" (quoting Erickson, 551 U.S. at 94, and Ashcroft, 556 U.S. at 679, respectively)).

As an initial matter, to the extent the Complaint alleges fraud (in connection with any of Plaintiff's federal or state claims) it fails to "state with particularity the circumstances

constituting fraud," Fed. R. Civ. P. 9(b). (See Docket Entry 1 at 1-12.) Further, even assuming Defendants qualify as debt collectors subject to the FDCPA,[3] the Complaint indicates that they responded on several occasions to Plaintiff's requests for validation. (See Docket Entry 1 at 4-5.) The Complaint asserts that Defendant SunTrust Mortgage, Inc. "has fail [sic] to present the original wet ink note promissory note . . . ." (Id. at 5.) However, the FDCPA does not require production of the original note; rather, the debt collector only need provide a copy of the verification of debt or a copy of a judgment against the consumer. See 15 U.S.C. § 1692g(b). The Complaint does not contend that Plaintiff failed to receive either such copy. (See Docket Entry 1

---

[3] The note at issue indicates that Plaintiff received her loan from Defendant SunTrust Mortgage, Inc. (See Docket Entry 6-1 at 2.) The Fourth Circuit has recognized that "a company's own efforts to collect overdue payments from its own delinquent clients would not ordinarily make it a 'debt collector' under the Act, which specifically refers to those who collect debts 'owed or due or asserted to be owed or due *another*.'" Wilson v. Draper & Goldberg, P.L.L.C., 443 F.3d 373, 379 n.2 (4th Cir. 2006) (quoting 15 U.S.C. § 1692a(6)) (emphasis in original); see also Nielsen v. Dickerson, 307 F.3d 623, 634 (7th Cir. 2002) ("Because the FDCPA defines a 'debt collector' as a person who endeavors to collect the debts owed to 'another,' creditors who are attempting to collect their own debts generally are not considered debt collectors under the statute." (internal citation omitted)). A number of courts in this circuit have recognized that mortgage servicing companies foreclosing on real property do not qualify as debt collectors under the FDCPA, as long as their assignment occurred before default. See, e.g., Pippin, 2012 WL 5023109, at *5-6; Blick v. Wells Fargo Bank, N.A., No. 3:11cv81, 2012 WL 1030137, at *7 (W.D. Va. Mar. 27, 2012) (unpublished); Ruggia v. Washington Mut., 719 F. Supp. 2d 642, 647-48 (E.D. Va. 2010); Scott v. Wells Fargo Home Mortgage Inc., 326 F. Supp. 2d 709, 717 (E.D. Va. 2003).

at 1-12.) In fact, correspondence Plaintiff received from Ms. Harris in May of 2012 included a copy of the note and security instrument. (See Docket Entry 6-7.) For these reasons, Plaintiff's FDCPA claims (Counts I-IV) fail as a matter of law.

The Complaint also alleges RESPA violations. (See Docket Entry 1 at 8-9.) In relevant part, RESPA requires mortgage loan servicers to respond to written correspondence from borrowers as follows:

> Not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the receipt from any borrower of any qualified written request under paragraph (1) and, if applicable, before taking any action with respect to the inquiry of the borrower, the servicer shall--
>
> (A) make appropriate corrections in the account of the borrower, including the crediting of any late charges or penalties, and transmit to the borrower a written notification of such correction (which shall include the name and telephone number of a representative of the servicer who can provide assistance to the borrower);
>
> (B) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--
>
>> (i) to the extent applicable, a statement of the reasons for which the servicer believes the account of the borrower is correct as determined by the servicer; and
>>
>> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower; or
>
> (C) after conducting an investigation, provide the borrower with a written explanation or clarification that includes--

> (i) information requested by the borrower or an explanation of why the information requested is unavailable or cannot be obtained by the servicer; and
>
> (ii) the name and telephone number of an individual employed by, or the office or department of, the servicer who can provide assistance to the borrower.

12 U.S.C. § 2605(e)(2). The Complaint alleges that Defendant SunTrust Mortgage, Inc. corresponded with Plaintiff on at least three occasions. (See Docket Entry 2 at 4-5.) Each of those letters responds to Plaintiff's requests as required by 12 U.S.C. § 2605(e)(2)(C), in that each indicates that Defendant SunTrust Mortgage, Inc. reviewed Plaintiff's account and found no errors, includes information Plaintiff requested or an explanation of why it cannot provide such information, attaches a copy of the original note, and provides contact information for further assistance. (See Docket Entries 6-7, 6-11, 6-12.) The Complaint fails to allege any insufficiency, except, as previously discussed, to object to the absence of the original "wet ink" promissory note (Docket Entry 1 at 5), which Defendants did not have to produce, see 12 U.S.C. § 2605(e)(2).

Count VI of the Complaint alleges a claim of copyright infringement. (Docket Entry 1 at 9.) "To prevail on a copyright infringement claim, the plaintiff must establish (1) ownership of a copyright, (2) validity of the copyright, and (3) unauthorized copying by the defendant." Ganz Bros. Toys v. Midwest Importers of Cannon Falls, Inc., 834 F. Supp. 896, 899 (E.D. Va. 1993). The

Complaint in this case does not reference any copyright at all, much less one to which Plaintiff claims ownership. (See id. at 1-12.)  Plaintiff's copyright claim thus fails as a matter of law.

The Complaint's state law claims similarly lack sufficient supporting factual allegations. (See id. at 1-12.)  Further, the Complaint appears to identify all parties to this action as residents of North Carolina. (See id. at 2-3.)  Such circumstances cannot satisfy the diversity jurisdiction statute. See 28 U.S.C. § 1332(a); Exxon Mobil Corp. V. Allapattah Servs., Inc., 545 U.S. 546, 553 (2005). Accordingly, upon finding the Complaint's federal claims deficient, the Court simply could decline to exercise supplemental jurisdiction over the Complaint's remaining state law claims.  See 28 U.S.C. § 1367(c)(3); United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 726 (1966).

## CONCLUSION

Both the Rooker-Feldman doctrine and the doctrine of collateral estoppel bar this action. Moreover, the Complaint fails to state a claim.

**IT IS THEREFORE RECOMMENDED** that Defendants' Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) and (6) (Docket Entry 5) be granted.

/s/ L. Patrick Auld
**L. Patrick Auld**
**United States Magistrate Judge**
September 16, 2014